IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TIMOTHY BRIGHT,
    Petitioner,

vs.                            Case No.: 3:12cv309/LAC/EMT

SEC'Y, DEP'T OF CORR.,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

    This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1). Respondent filed a motion to dismiss the petition as untimely, with relevant portions of the state court record (docs. 19, 21, 22). Petitioner filed a response in opposition to the motion (doc. 24).

    The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

I.    BACKGROUND AND PROCEDURAL HISTORY

    The procedural background of this case is undisputed and established by the state court record (doc. 21; doc. 24 at 1).[1] Petitioner was charged in Escambia County Circuit Court, Case No.

---

[1] Hereinafter all citations to the state court record refer to the electronically filed exhibits to Respondent's motion to dismiss (docs. 21, 22), unless otherwise indicated. If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

2002-CF-4410, with one count of sexual battery with a deadly weapon or force likely to cause serious bodily injury (Ex. GG at 15). On June 2, 2003, he entered a negotiated plea of nolo contendere to the charge, in exchange for the State's recommending a departure sentence of eighteen (18) months of community control followed by eighteen (18) months of probation (Ex. GG at 8–11). The court accepted the plea, adjudicated Petitioner guilty, and sentenced him in accordance with the agreement (Ex. B). Petitioner did not directly appeal the judgment and sentence (doc. 19 at 2).

On February 5, 2004, an affidavit of violation of community control was filed, alleging Petitioner violated four conditions of his community control (Ex. C). At proceedings held August 25, 2004, Petitioner pleaded nolo contendere to two of the violations (Exs. A, C, Ex. J at 99–105). The court adjudicated Petitioner guilty of the violations and revoked his community control (*id.*). The court sentenced him to 180 months in state prison, but suspended execution of the sentence and placed him on community control for eighteen (18) months (*id.*). Petitioner did not directly appeal the judgment and sentence (doc. 19 at 2).

On October 18, 2004, an affidavit of violation of community control was filed (doc. 19 at 2; doc. 21, Ex. D). At proceedings held January 28, 2005, Petitioner pleaded nolo contendere to the violation (Exs. A, D). The court adjudicated Petitioner guilty and revoked his community control (*id.*). The court continued Petitioner's suspended prison sentence, and reinstated his community control for a period of eighteen (18) months, to be followed by two (2) years of probation (*id.*). Petitioner did not directly appeal the judgment and sentence (doc. 19 at 2).

On May 10, 2005, an affidavit of violation of community control was filed (Ex. E). At proceedings held September 9, 2005, Petitioner pleaded nolo contendere (*id.*). In an order rendered the same day, the court adjudicated Petitioner guilty, revoked his community control, and made active the 180-month state prison sentence (*id.*). Petitioner did not appeal the judgment and sentence (doc. 19 at 2).

On October 7, 2005, Petitioner, through counsel, filed a motion to modify sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. F). The trial court held a hearing on December 13, 2005, at the conclusion of which the court denied the motion (doc. 22, Ex. G). Petitioner did not appeal the decision (doc. 19 at 2–3).

On January 23, 2006, Petitioner filed a pro se motion for postconviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. H). He subsequently filed an amended motion (Ex. I). On May 16, 2006, the state circuit court dismissed with prejudice in part and denied in part Petitioner's motions (Ex. J). The court also denied Petitioner's motion for appointment of counsel (*id.*). Petitioner filed a notice of appeal and a motion for appointment of counsel on appeal, and the court appointed counsel to represent Petitioner on appeal to the Florida First District Court of Appeal ("First DCA"), Case No. 1D06-3078 (*see* Ex. K). Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (*id.*). Petitioner filed a pro se initial brief (Ex. L). The First DCA affirmed the decision per curiam without written opinion on May 9, 2007, with the mandate issuing June 5, 2007 (Exs. M, N). Bright v. State, 956 So. 2d 458 (Fla. 1st DCA 2007) (Table).

On April 11, 2008, Petitioner filed a pro se petition for writ of habeas corpus in the state circuit court (Ex. O). The court construed the motion as a Rule 3.850 motion and denied relief (Ex. P). Petitioner appealed the judgment to the First DCA, Case No. 1D08-4298 (Ex. Q). The First DCA affirmed the decision per curiam without written opinion on June 23, 2009, with the mandate issuing July 21, 2009 (Exs. S, T). Bright v. State, 12 So. 3d 222 (Fla. 1st DCA 2009) (Table).

On October 28, 2009, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. U). The state circuit court denied the motion on February 4, 2010, and denied Petitioner's motion for rehearing on March 5, 2010 (Exs. V, W, X). Petitioner appealed the decision to the First DCA, Case No. 1D10-1393 (Ex. X at 54–55). The First DCA affirmed the decision per curiam without written opinion on June 23, 2009, with the mandate issuing July 20, 2010 (Exs. Y, Z). Bright v. State, 38 So. 3d 772 (Fla. 1st DCA 2010) (Table).

On February 16, 2011, Petitioner filed another Rule 3.800(a) motion (Ex. AA). The state circuit court denied the motion on July 7, 2011, and denied Petitioner's motion for rehearing on August 10, 2011 (Exs. BB, CC, DD). Petitioner appealed the decision to the First DCA, Case No. 1D11-4886. The First DCA affirmed the decision per curiam without written opinion on December

8, 2011, with the mandate issuing January 4, 2012 (Exs. EE, FF). Bright v. State, 75 So. 3d 720 (Fla. 1st DCA 2011) (Table).

On March 28, 2011, Petitioner filed a "Motion for Enlargement of Time to File Belated Motion to Withdraw Plea" (Ex. GG). He also filed a "Motion Seeking Order from the Court to Rescind Order Dismissing with Prejudice Defendant's First Postconviction Motion for Relief and Motion for Enlargement of Time to File Belated Motion to Amend Postconviction Motion and Petition for Writ of Habeas Corpus" (Ex. HH). In an order rendered July 7, 2011, the state circuit court denied the motions and issued an order placing Petitioner on notice that successive motions raising frivolous or repetitious claims would not be tolerated by the court (Ex. II). Petitioner appealed the decision to the First DCA, Case No. 1D11-4885 (Ex. JJ). The First DCA affirmed the decision per curiam without written opinion on March 5, 2012, with the mandate issuing April 2, 2012 (Exs. LL, MM). Bright v. State, 83 So. 3d 712 (Fla. 1st DCA 2012) (Table).

On March 12, 2012, Petitioner filed a "Motion to Correct Illegal Sentence and/or Petition to Invoke this Court's All Writs Jurisdiction" in the state circuit court (Ex. NN). The court denied the motion on April 13, 2012 (Ex. OO). The court also issued an order directing Petitioner to show cause, within thirty (30) days, why he should not be prohibited from filing additional pleadings in his criminal case unless the pleadings were reviewed and signed by an attorney (Ex. PP). Petitioner responded to the show cause order (Ex. QQ). On May 15, 2012, the circuit court issued an order finding that Petitioner abused the judicial process and should be barred from future pro se filings in his criminal case (Ex. RR). The court prohibited Petitioner from filing additional pleadings in his criminal case unless the pleadings were reviewed and signed by an attorney (*id.*). Petitioner appealed the decision to the First DCA, Case No. 1D12-2972 (Ex. SS). That appeal is still pending (*see* Ex. TT).

Petitioner filed the instant § 2254 petition on June 19, 2012 (doc. 1).

II. ANALYSIS

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas

petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

Respondent contends the appropriate statutory trigger for the federal limitations period in this case is § 2244(d)(1)(A), the date on which the judgment of conviction became final by the conclusion of direct review or the expiration of the time for seeking such review (doc. 19 at 8). Respondent argues that date is October 9, 2005, when the time for Petitioner's filing an appeal of the judgment rendered September 9, 2005 expired (*id.*).

Petitioner argues the appropriate statutory trigger is § 2244(d)(1)(D), that is, the date on which the factual predicate of his claim or claims could have been discovered through the exercise of due diligence (doc. 24). He argues he could not have discovered the factual basis for Ground One until November 5, 2005 (doc. 1 at 8–12; doc. 24 at 3–12).[2] In Ground One, Petitioner alleges Attorney Jay Williams, Petitioner's court-appointed conflict counsel during the 2003 proceedings on the original charge of sexual battery with a weapon, provided ineffective assistance as follows: (1) Williams misadvised Petitioner that a violation of his community control would result in a prison sentence not exceeding three (3) years; (2) Williams failed to investigate or conduct any discovery in the case; (3) Williams failed to formulate a defense strategy; (4) Williams failed to inform

---

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Petitioner of the lack of evidence against him; and (5) Williams failed to challenge the sufficiency of the evidence to support the "use of a weapon" element of the charge (doc. 1 at 4, 8–10). Petitioner also alleges Assistant Public Defender ("APD") Alice Harris, Petitioner's counsel in all of his violation of community control ("VOCC") proceedings in 2004 and 2005, provided ineffective assistance of counsel by failing to explain the consequences of the 180-month suspended prison sentence imposed on August 25, 2004, specifically, that if he violated his supervision, he could be sentenced to 180 months in state prison, instead of the original 36-month term of supervision imposed in 2003 (*id.* at 11–12).

Considering first APD Harris' alleged ineffectiveness, that is, her alleged failure to explain the consequences of the 180-month suspended prison sentence, it is clear that Petitioner discovered the factual basis for this claim no later than September 9, 2005, when the court made active the 180-month suspended sentence. With regard to Attorney Williams' alleged ineffectiveness, Petitioner contends he could not have discovered Williams' failure to investigate or conduct any discovery, and Williams' failure to inform him of the lack of evidence against him, until APD Harris provided Petitioner access to the discovery materials in his file, on November 5, 2005 (doc. 1 at 8–12; doc. 24 at 3–12). Petitioner alleges that prior to that date, he and his mother attempted to obtain the discovery materials, but they were unable to do so (*see* Ex. H at 20–22, Affidavit of Janice Jones). Because the date on which Petitioner alleges the factual predicate of the claims presented in Ground One could have been discovered is earlier than the date on which the factual predicate of the claims presented in Ground Two could have been discovered, as discussed *infra*, the court accepts—for the sake of argument only—November 5, 2005, as the date Petitioner could have discovered the factual predicate for the claims presented in Ground One.

Petitioner alleges he could not have discovered the factual predicate for the claims presented in Ground Two until September of 2010 (doc. 1 at 13–16; doc. 24 at 12–14), as explained next. In Ground Two, Petitioner raises separate claims with regard to Attorney Williams and APD Harris. First, he claims that Attorney Williams provided ineffective assistance during his representation in 2003, by misadvising Petitioner that his conviction would not qualify him for possible involuntary civil commitment under Florida's Jimmy Ryce Act, Florida Statutes § 394.915 (doc. 1 at 4, 13–16). Petitioner alleges he learned that Williams' advice was erroneous on July 28, 2006, when the state

circuit court held a hearing to determine whether he qualified for designation as a sexual predator and, upon conclusion of the hearing, issued written findings designating him a sexual predator (*id.* at 13). Second, Petitioner contends APD Harris provided ineffective assistance at the July 28, 2006 hearing. He contends Harris failed to challenge the sexual predator designation (doc. 24 at 13). He also claims he asked Harris to file a motion to withdraw his 2003 plea, based upon Attorney Williams' failure to advise him of the potential for designation as a sexual predator, but Harris misadvised him it was too late to do so (doc. 1 at 14; doc. 24 at 13). Petitioner alleges he could not have discovered the factual basis for his claims against Williams or Harris until September of 2010.

Petitioner alleges that in September 2010 he learned, during a "progress review" with his Department of Corrections classification officer, that prior to the sexual predator designation hearing, Assistant State Attorney ("ASA") Kelly Hill wrote a letter to Petitioner's classification officer stating Petitioner did not qualify as a sexual predator (doc. 1 at 14–15; doc. 24 at 13). Petitioner alleges had he known about this letter, he would have told APD Harris, who represented him at the hearing on the sexual predator designation held July 28, 2006, that he wished to contest the designation (*id.*). Petitioner submitted a copy of the letter in one of the state postconviction proceedings (Ex. GG at 37). In the letter, dated January 31, 2006, ASA Hill states Petitioner "has no prior qualifying offenses and therefore does not qualify as a Sexual Predator." (*id.*).

With regard to the first claim raised in Ground Two, alleging ineffective assistance by Attorney Williams in 2003 for misadvising Petitioner he did not qualify for sexual predator designation, Petitioner discovered the factual basis of this claim, that is, that he did in fact qualify, no later than July 28, 2006, the date of the sexual predator designation hearing at which the court determined Petitioner qualified as a sexual predator (*see* Ex. II at 128–48). On that date Petitioner knew that Attorney Williams' alleged advice was erroneous. Therefore, the factual predicate for the claim as to Williams in Ground Two was discoverable on July 28, 2006.

With regard to the allegations as to APD Harris in Ground Two—that she failed to contest the sexual predator designation and misadvised Petitioner that it was too late to seek to withdraw his 2003 plea—the undersigned rejects Petitioner's argument that he could not have discovered the factual basis for these claims until September of 2010, when he became aware of ASA Hill's letter. Petitioner could have asserted both of his ineffective assistance of counsel claims against APD

Harris regardless of the fact that the State Attorney's Office took the position in January of 2006 that Petitioner did not qualify for sexual predator designation. The State obviously changed its position three (3) months after ASA Hill sent the letter to Petitioner's classification officer, as evidenced by the fact that on April 6, 2006, the State filed a Motion for Entry of an Order that the Defendant Qualifies as a Sexual Predator (*see* Ex. A, docket entry 307, dated 04/06/2006). As previously discussed, a hearing on the State's motion was held on July 28, 2006, at which Assistant State Attorney B. Neel appeared for the State, and APD Harris appeared on Petitioner's behalf (*id.*, docket entries 328–333, dated 07/28/2006). At the conclusion of the hearing the court found that Petitioner qualified for designation as a sexual predator (Ex. Ex. II at 128–48). The fact that the State Attorney's Office initially took a different position on Petitioner's qualification for the designation did not provide a legal basis for APD Harris to challenge the designation. Further, the fact that the State initially took a different position did not affect the timeliness of a motion to withdraw the plea, based upon Attorney Williams' alleged misadvice in 2003. Therefore, Petitioner failed to demonstrate that the factual basis for either of his sub-claims against APD Harris was dependent upon his discovery of ASA Hill's letter.

Moreover, the undersigned concludes that the factual bases for the sub-claims asserted against APD Harris in Ground Two were discoverable, with the exercise of due diligence, on or before July 28, 2006. To state an ineffective assistance of counsel ("IAC") claim against APD Harris for failing to contest the sexual predator designation, Petitioner would have had to show: (1) APD Harris failed to contest the designation at the July 28, 2006 hearing; and (2) her failure to do so was unreasonable, because she had a meritorious basis for doing so.[3] To state an IAC claim against APD Harris for misadvising him that it was too late to file a motion to withdraw his 2003 plea, Petitioner would have had to allege: (1) APD Harris advised him on July 28, 2006, that it was

---

[3] In this federal habeas proceeding, Petitioner does not allege on what basis APD Harris could have challenged the sexual predator designation. In state court, he alleged he did not meet the sexual predator criteria because the statute required that the victim be a minor, and the victim was not (Exs. HH, NN). The state court rejected this claim (Exs. II, OO). Petitioner knew, or could have known with the exercise of diligence, the age of the victim well before the July 28, 2006 hearing, for a variety of reasons, including that her age was alleged in the charging document filed October 18, 2002 (Ex. NN at 35).

Case No.: 3:12cv309/LAC/EMT

too late to file a motion to withdraw his 2003 plea[4]; and (2) Harris' advice was unreasonable, because Petitioner could have moved to withdraw his plea at that time pursuant to Rule 3.850(a)(5), (b)(1) of the Florida Rules of Criminal Procedure, due to his inability to discover that his plea was involuntary until July 28, 2006, when the court designated him a sexual predator, and he thus learned that Attorney Williams had misadvised him during the plea process in 2003.[5] Although the reasonableness of APD Harris' representation at the July 28, 2006 hearing is a mixed question of law and fact, it is evident that Petitioner knew or certainly could have discovered with the exercise of due diligence the factual basis for sub-claim one on or before July 28, 2006. Likewise, with regard to sub-claim two, Petitioner was aware of Harris' advice the day she provided it, and the provisions set forth in Rule 3.850(a)(5), (b)(1) could have been discovered with the exercise of due diligence on or before July 28, 2006 (especially considering that Petitioner had previously filed a motion and amended motion under Rule 3.850).

For the aforementioned reasons, the undersigned rejects Petitioner's argument that the triggering date for the federal limitations period for the claims asserted in Ground Two is the date he discovered ASA Hill's letter in September of 2010. The undersigned concludes Petitioner could have discovered, with due diligence, the factual predicate for his claims involving Attorney Williams and APD Harris on July 28, 2006, at the latest.

Having determined that Petitioner could have discovered the factual predicate for the claims presented in Ground One on November 5, 2005, and he could have discovered the factual predicate for the claims presented in Ground Two on July 28, 2006, and because both of those dates are later than the date Petitioner's conviction became final on October 9, 2005, the appropriate statutory trigger for the federal habeas limitations period is July 28, 2006, pursuant to § 2244(d)(1). The

---

[4] Such allegation would seemingly be inconsistent with a sworn statement made by Petitioner in his amended Rule 3.850 motion, filed on April 17, 2006, that Harris advised Petitioner (some time after November 5, 2005, the day she provided Petitioner access to the discovery materials in his file) that the evidence against him was "never overwhelming" and that he should file a Rule 3.850 motion seeking relief on this basis (*see* Ex. I at 130).

[5] Rule 3.850 provides that a motion to withdraw an allegedly involuntary plea must be filed within two years after the judgment and sentence become final unless the motion alleges that "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, and the claim is made within 2 years of the time the new facts were or could have been discovered with the exercise of due diligence." Fla. R. Crim. P. 3.850(a)(5), (b)(1).

Case No.: 3:12cv309/LAC/EMT

statute of limitations began to run the next day, on July 29, 2006.[6] *See* Wainwright v. Sec'y, Dep't of Corr., 537 F.3d 1282, 1283–84 (11th Cir.2007) (citing Fed. R. Civ. P. 6(a)); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (Rule 6 applies to calculation of one-year statute of limitations under AEDPA). Petitioner had one year from that date, or until July 29, 2007, to file his § 2254 petition. *See* Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (limitations period should be calculated according to "anniversary method," under which limitations period expires on anniversary of date it began to run) (citing Ferreira, 494 F.3d at 1289 n.1). Petitioner did not file his federal petition on or before that date; therefore, it is untimely unless tolling principles apply and render it timely.

Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). Petitioner's federal limitations period began while his Rule 3.850 motion was pending. Respondent concedes the Rule 3.850 motion was a tolling motion (doc. 19 at 8–9). The motion tolled the limitations period until June 5, 2007, the date of the First DCA's mandate affirming the lower court's decision denying the motion. *See* Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000) (where Florida petitioner appeals trial court's denial of post-conviction application, application remains pending until issuance of the mandate by the appellate court).

The federal limitations period then ran for **three hundred ten (310) days** until April 11, 2008, the date Petitioner filed his state habeas petition, which the state court construed as a Rule 3.850 motion. Respondent concedes this was a tolling application (doc. 19 at 9). That application tolled the limitations period until July 21, 2009, upon issuance of the First DCA's mandate affirming the lower court's denial of the petition. *See* Nyland, 216 F.3d at 1267. The federal limitations period expired **fifty-five (55) days** later, on September 15, 2009 (**310 + 55 = 365 days**). Petitioner's postconviction applications filed after that date had no tolling effect, because there was no period

---

[6] Pursuant to Rule 6 of the Federal Rules of Civil Procedure, the day of the event that triggers the time period is excluded from the calculation.

remaining to be tolled. *See* Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000). His federal petition, filed June 19, 2012, was untimely by nearly three years.

To the extent Petitioner argues he is entitled to review of his claims through the "actual innocence" gateway, he has failed to state a colorable claim of actual innocence. In Schlup v. Delo, 513 U.S. 298, 324, 326–27, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), the Supreme Court set forth the standard of proof governing a habeas petitioner's procedural claim of actual innocence: the petitioner must show that constitutional error "probably resulted" in the conviction of one who is actually innocent. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

The Schlup Court went on to make several observations about this standard. With respect to the term "probably resulted," the Court clarified that, "[t]o establish the requisite probability, the petitioner must show that it is <u>more likely than not</u> that no reasonable juror would have convicted him in light of the new evidence." *Id.*, 513 U.S. at 327, 330 (emphasis added). With respect to the term "reasonable juror," the Court instructed: "It must be presumed that a reasonable juror would consider fairly all of the evidence presented. It must also be presumed that such a juror would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Id.*, 513 U.S. at 329.

In assessing the adequacy of the petitioner's showing, the district court "is not bound by the rules of admissibility that would govern at trial." Schlup, 513 U.S. at 329. Instead, the court is allowed also to consider "the probative force of relevant evidence . . . 'including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Id.*, 513 U.S. at 328 (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,

38 U. Chi. L. Rev. 142, 160 (1970)). The Court also observed that when considering an actual innocence claim in the context of a request for an evidentiary hearing,

> the District Court must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial. Obviously, the court is not required to test the new evidence by a standard appropriate for deciding a motion for summary judgment. Instead, the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.

Schlup, 513 U.S. at 331–32.

In House v. Bell, 547 U.S. 518, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006), the Supreme Court did not alter the standard set forth in Schlup. It reiterated that standard, emphasized certain features of it, and evaluated the evidence developed in House's federal habeas proceeding under that standard. The Court did note, as a preliminary matter, that the parties in that case did not dispute that House had presented new reliable evidence. House, 547 U.S. at 537 ("There is no dispute in this case that House has presented some new reliable evidence; the State has conceded as much." (citations to record omitted)). In addition, because the district court in House held an evidentiary hearing, a decision the State did not challenge, the Court cautioned that it had no occasion to elaborate on Schlup's observation that the court may consider how certain factors bear on the probable reliability of the petitioner's evidence. House, 547 U.S. at 537.

In the instant case, Petitioner submitted his own affidavit, dated March 28, 2011, in which he states his version of the events on the night of the sexual battery (doc. 1 at 17–18). More specifically, Petitioner states that the sexual encounter with the victim, C. Coleman, was consensual (*id.*). Several factors cast doubt on the reliability of Petitioner's affidavit. First, Petitioner did not sign the affidavit; instead, it bears only the symbol "/s/" (*id.* at 18). Second, in the plea agreement that Petitioner signed on June 2, 2003, Petitioner conceded that the arrest report provided a factual basis for the plea (Ex. V at 37, 39). The arrest report states, in relevant part:

> C. Coleman stated that Bright walked into her bedroom, laid down next to her in the bed, and started to touch her breasts. C. Coleman stated that Bright retrieved what appeared to be a small knife from his wallet and attempted to get on top of her. C. Coleman resisted and Bright placed a small knife to her throat and stated "spread your legs or I'll kill you." C. Coleman stated she was in fear and stopped resisting once Bright put the knife to her throat. C. Coleman advised, Bright forcefully

> penetrated her vagina with his penis as he proceeded to have intercourse with her. Bright finished and returned to D. Coleman's room. D. Coleman stated she woke up when Bright started to touch her and called for help. C. Coleman confronted Bright with a razor knife and chased him from the residence. . . . During the search of Bright's wallet [after his arrest], Officer Hirst observed an indention [sic] in the shape of a small knife. While collecting evidence at [the victim's residence], Officer Hirst and DSA Heintzelman #505 discovered the missing knife in C. Coleman's bed sheets.

(Ex. V at 39). Third, Petitioner's assertions in his affidavit are different in material respects from the version of the events he described, under penalty of perjury, in his Rule 3.850 motion (Ex. H at 9–11, 19). In light of the unreliability of Petitioner's affidavit, and his concession in the plea agreement to the description of the incident set forth in the arrest report, the undersigned concludes Petitioner failed to present new reliable evidence raising a sufficient doubt about his guilt to undermine confidence in his conviction. Accordingly, Petitioner has not made a threshold showing of actual innocence to avoid the statute of limitations bar to the consideration of his petition.

III. CONCLUSION

Petitioner filed his § 2254 petition after the one-year federal limitations period expired. Further, Petitioner failed to demonstrate that statutory tolling renders his petition timely. Moreover, he failed to show he is entitled to federal review of his claims through the fundamental miscarriage of justice gateway. Therefore, the § 2254 petition should be dismissed with prejudice as time-barred.

IV. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Respondent's motion to dismiss (doc. 19) be **GRANTED**.

2. That the petition for writ of habeas corpus (doc. 1) be **DISMISSED** with prejudice as untimely.

3. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 15th day of May 2013.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**